(No. 55770.—

THE PEOPLE *ex rel.* THE DEPARTMENT OF PUBLIC AID, Appellant, v. LEIDA SANTOS *et al.*, Appellees.

*Opinion filed September 17, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield (William A. Wenzel, Ellen P. Brewin, and Richard D. Grossman, Special Assistant Attorneys General, of Chicago, of counsel), for the People.

Robert Lehrer, Thomas Johnson, Diane Redleaf, and James Potter, of Chicago, for appellees.

JUSTICE WARD delivered the opinion of the court:

This appeal is from the circuit court of Cook County's dismissal of three actions filed by the Attorney General for the People *ex rel.* the Department of Public Aid (the Department). The actions were brought to collect upon promissory notes executed by three public assistance recipients who had been informed by the Department that they had received overpayments of benefits. At the time the complaints were filed in the circuit court, a class action was pending in a United States district court that challenged the validity of the notes on Federal grounds. That action is still pending. The named plaintiffs in it are the same three recipients who were sued in the circuit court, and the defendants in the Federal court action are the Director of the Department and the supervisor of the Department's collection division. The circuit court dismissed the State actions because it considered that section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(c)) requires auto-

matic dismissal of the later-filed action when two actions based on the same facts are pending between the same parties. The appellate court affirmed. (100 Ill. App. 3d 237.) We granted leave to appeal. 73 Ill. 2d R. 315.

The Federal action was filed on September 11, 1979, in the United States District Court for the Northern District of Illinois at Chicago. The suit was brought by Mentalio Taylor, Edna Dodge, and Leida Santos, on their behalf and on behalf of similarly situated public aid recipients. They allege that they are recipients of Aid to Families with Dependent Children (AFDC), and that the Department administers the AFDC program in Illinois. They allege that they executed notes promising to pay the Department claimed overpayments of AFDC benefits. They assert that the Department's practice of obtaining promissory notes to recover the overpayments of AFDC benefits violates Federal statutory law, implementing Federal regulations, and the Constitution of the United States. They request the district court to enjoin the challenged practice and to declare void all notes executed under the practice.

The State actions to recover on the notes were brought shortly after the commencement of the Federal action. The complaints were filed on October 24, 1979, in the circuit court of Cook County in Chicago. The complaints allege that the recipients received overpayments of benefits and executed the notes in consideration of the Department's promise to forbear from suing to recover. On the motion of the recipients, the circuit court dismissed the actions on June 25, 1980. The court considered that, under section 48(1)(c) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48(1)(c)), it lacked discretion to permit the actions to continue where a previously filed action on the same matter was pending between the parties.

On the same day that the actions on the notes were

filed in the circuit court, the Department officials who had been sued in the district court filed a motion to dismiss the Federal action. Among the grounds for their motion was that, in view of the filing of the State actions, the Federal court should abstain under the doctrine of *Younger v. Harris* (1971), 401 U.S. 37, 27 L. Ed. 2d 669, 91 S. Ct. 746. The motion was denied after the circuit court dismissed the actions, although the district court's memorandum order makes it clear that the dismissal of the State actions was not the only ground for declining to abstain.

There has been no attempt in the district court to counterclaim for enforcement of the notes. After the State court actions were begun, the recipients asked the district court to declare that the Department's claims on the notes are compulsory counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure. With certain exceptions, that rule requires that a pleader state as a counterclaim any claim existing against an opposing party at the time of service, if the claim arises from the transaction or occurrence that is the subject matter of his opponent's claim, and if it was not the subject matter of another pending suit at the time the action was commenced.

The district court denied the motion. In so doing, the court did not determine whether the claim for enforcement of the notes is a compulsory counterclaim. Instead, the court concluded that it would be inappropriate to allow the motion and decided that it was unnecessary to rule upon the issue. The court stated that the recipients' purpose in making the motion was to halt the State court actions, but a defendant's failure to advance a compulsory counterclaim in Federal court does not bar the defendant from seeking relief in State courts.

The statutory section relied upon by the circuit court, section 48(1)(c) of the Civil Practice Act (Ill. Rev.

Stat. 1979, ch. 110, par. 48(1)(c)), provides:

"Involuntary dismissal based upon certain defects or defenses.

(1) Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

* * *

(c) That there is another action pending between the same parties for the same cause."

As we have stated, in dismissing the actions the circuit court deemed that it lacked any discretion to allow the actions to continue while the previously filed Federal suit was pending. That is incorrect, however, under this court's decision in *A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245.

*Staley* was decided a few months after the circuit court dismissed the actions here. It involved two suits arising out of Swift's sale to Staley of a processing plant that Swift was building, and had agreed to complete, in Iowa. Both Swift and Staley were Delaware corporations with their principal places of business in Illinois. The first suit was brought in a State court in Iowa by Swift against Staley. In the action, Swift sought to recover money that Staley had retained to insure construction of the plant. Less than two hours after that suit was filed, Staley filed an action in a circuit court in Illinois, for damages caused by Swift's failure to complete the plant. The action in this State was dismissed, though, because the court believed that section 48(1)(c) mandated dismissal in deference to the previously filed action in Iowa.

On appeal this court disagreed. It judged that the priority of the filing time of the suits is not determinative under the section. It held that "the circuit court possesses some degree of discretion in ruling upon the [section 48(1)(c)] motion and that multiple actions in different juris-

dictions, but arising out of the same operative facts, may be maintained where the circuit court, in a sound exercise of its discretion, determines that both actions should proceed [citation]." (84 Ill. 2d 245, 253.) This court did not find it necessary, though, to remand the matter for such a determination. Instead, the court performed its own discretionary analysis pursuant to our authority under Rule 366(a)(5) (73 Ill. 2d R. 366(a)(5)) to enter any relief that the trial court could have afforded. 84 Ill. 2d 245, 253.

The *Staley* court decided to allow the Illinois action to proceed on two grounds. First, the court recognized that the matter was substantially related to Illinois, as was demonstrated by *Staley* in defending a prior *forum non conveniens* motion. Specifically, the court noted that the principals were Illinois residents, and that under the parties' agreement Illinois law was to govern. Too, most of the discoverable paperwork was in Illinois, and the economic impact of the litigation would be greater in this State. 84 Ill. 2d 245, 248-49, 253.

The second factor of importance to this court in *Staley* was that dismissal of the action in Illinois would force Staley to proceed by counterclaim in the Iowa action. The Iowa rules of court, it appeared, would not require such a counterclaim, as they provided that a counterclaim need not be pleaded where the relief sought is the subject of an action pending elsewhere. The court considered that the policy against duplicative litigation did not require that Illinois create in a *de facto* sense a compulsory counterclaim rule for Iowa courts. 84 Ill. 2d 245, 253.

This court deemed it unnecessary to stay the matter, too. It did not consider "that a resident corporation's right to its day in court should await resolution of sister-State litigation where, as here, plaintiff's filing of its complaint does not evidence an intent to harass or gain undue influence over defendant and where, as here, the possibility of completely resolving this controversy in Illinois is greater

[citation]." 84 Ill. 2d 245, 254.

Here too, of course, there are actions pending in different jurisdictions. This court has recognized that while a State court and a United States district court might both sit in Illinois, actions pending before the two courts are deemed actions brought in separate jurisdictions. (See *Skolnick v. Martin* (1964), 32 Ill. 2d 55, *cert. denied* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1562, facts set out at 47 Ill. App. 2d 167.) We consider it appropriate here, as did the court in *Staley,* to make our own discretionary analysis as to whether the action in Cook County should be dismissed rather than to delay further the proceedings by remanding for the circuit court's discretionary examination.

Section 48(1)(c) is designed to avoid duplicative litigation and is to be applied to carry out that purpose. (See *A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 252; *People ex rel. Phillips Petroleum Co. v. Gitchoff* (1976), 65 Ill. 2d 249, 255; *People ex rel. Lehman v. Lehman* (1966), 34 Ill. 2d 286, 290.) An inspection of the unusual circumstances of this action leads us to conclude that section 48(1)(c) does not require that the action be dismissed. We judge, however, that it ought to be stayed pending the disposition of the Federal action.

In *Staley,* this court recognized the importance of keeping our courts open in the face of another pending action on the same matter where an Illinois court would be in a better position to decide the controversy. Here, there is even greater reason not to dismiss. The circuit court is the only forum in which the enforceability of the notes, apart from the Federal question, is at issue, and it may be the only forum in which that issue can be litigated.

The Federal suit is a class action against two individuals grounded on Federal law. The State suit is an action brought for the Department to collect upon only three notes. The enforceability of the notes under State law has

not been raised as an issue in the district court. The Federal questions were not raised in the State court. In such circumstances we do not see there is duplicative litigation to prevent; the two courts are to decide separate questions.

Too, it is questionable whether the two defendants in the Federal court can counterclaim there for enforcement of the notes. The Federal action was brought against only those two individuals, not against the Department itself. Obviously it was brought so as to avoid the prohibition in the eleventh amendment (U.S. Const., amend. XI) of suits against States. (See generally *Edelman v. Jordan* (1974), 415 U.S. 651, 39 L. Ed. 2d 662, 94 S. Ct. 1347.) The notes were not promises to pay those two persons, however, but promises to pay the Department. The debts owed, therefore, are not debts owed to the defendants in the Federal case.

There is question as to whether the Director has the authority under State law to litigate in his own name to recover a debt for the Department. The Attorney General has pointed out that the Public Aid Code provides that actions for the enforcement of claims are to be brought by the Attorney General on behalf of the State. Ill. Rev. Stat. 1979, ch. 23, par. 12—16.

Too, it may be questioned whether under Federal procedure the two defendants could counterclaim for enforcement of the notes. The recipients contend that the individuals sued can assert that counterclaim, but the recipients refer us only to *Aldens v. Packel* (3d Cir. 1975), 524 F.2d 38, *cert. denied* (1976), 425 U.S. 943, 48 L. Ed. 2d 187, 96 S. Ct. 1684.

In *Aldens* an Illinois corporation brought an action against the Attorney General of Pennsylvania for declaratory relief barring the enforcement of a Pennsylvania statute. The Commonwealth itself was not sued. In the portion of the judgment relevant here the court held that the At-

torney General could counterclaim for a declaration of the statute's constitutionality and for an injunction ordering the corporation to comply, although, in a strict sense, the cause of action asserted by the counterclaim was the Commonwealth's and not the Attorney General's. The court said broadly that it was actuated by a policy of expeditiously resolving all controversies arising from the involved transaction. (524 F.2d 38, 50-51.) A footnote sets out the court's speculation that its policy would even permit a public official who has been sued to counterclaim for a debt owed to the Commonwealth. 524 F.2d 38, 51 n.20.

We are not convinced that on the basis of *Aldens* it is certain that the district court here would allow the two Department officials to counterclaim on behalf of the State. The *Aldens* court noted that a contrary view had been expressed by the court in another circuit in *Dunham v. Crosby* (1st Cir. 1970), 435 F.2d 1177, *overruled on other ground, Raper v. Lucey* (1st Cir. 1973), 488 F.2d 748. Considering the existing "law of the circuit" situation (see generally Schaefer, *Foreword: Stare Decisis and the "Law of the Circuit,"* 28 De Paul L. Rev. 565 (1979)), the Court of Appeals for the Seventh Circuit would not be under compulsion to follow *Aldens*.

In *Dunham,* a teacher brought an action against a school superintendent and school board members as individuals for wrongful dismissal. The defendants counterclaimed for the recovery of portions of the salary that had been paid to the teacher. The district court dismissed the claim against the superintendent for failure to exhaust administrative remedies, and it dismissed the claim against the board members on evidentiary grounds. It also dismissed the counterclaim upon the ground that it was a matter for the State courts. The *Dunham* court did not reverse the disposition of the counterclaim, although it remanded it for consideration in light of its own decision to reinstate the claim against the superintendent. In so doing,

the court stated that the superintendent alone could not counterclaim for a debt owed to the school board, and suggested that neither could the school board members counterclaim for the debt because they were sued as individuals. 435 F.2d 1177, 1181.

The Attorney General acknowledges that the difficulty could be remedied by the intervention of the State in the Federal suit. The Attorney General is unwilling to proceed in that fashion, though, considering that a waiver of the State's eleventh amendment protection might result. He prefers to proceed in the State courts against individual recipients rather than expose the State to an expansion of the Federal litigation. It was not contemplated that section 48(1)(c) could be invoked to force the State into waiving the shield of the eleventh amendment. We do not judge that the policy against duplicative litigation requires that an action in this State be dismissed on the basis of a pending suit in another jurisdiction where the questions presented in the State suit are not at issue, and it is not clear that they even can be raised in the other jurisdiction's suit.

This decision does not require, though, that both suits must be tried simultaneously. The court in *Staley* recognized that the provision in section 48(1)(c) for the filing of "a motion for dismissal of the action or for other appropriate relief" makes it clear that dismissal is not the only relief available under the section. (84 Ill. 2d 245, 252.) Though the court in *Staley* decided against it, the court considered the possibility of a stay as an alternative disposition. (84 Ill. 2d 245, 254.) Here we believe a stay would be appropriate.

The factors mentioned in *Staley* which are to be considered on the question of staying the action are: comity; the prevention of multiplicity, vexation, and harassment; the likelihood of obtaining complete relief in the foreign jurisdiction; and the *res judicata* effect of a foreign judgment in the local forum. (84 Ill. 2d 245, 254.) A consider-

ation of these factors shows the propriety of a stay here. There is still a possibility that the claim for enforcement of the notes will be asserted as a counterclaim, as the recipients in oral argument stated that they might amend the Federal action to include the Department, the real party in interest, as a defendant. Moreover, the deciding of the Federal suit to invalidate the notes might be dispositive of the State actions. Staying the State actions would remove the chance of conflicting judgments.

We believe the disposition we make remedies the practical problems which seem to have led to this appeal. The recipients do not appear to be disturbed about the pendency of the State actions, but about the difficulties that have developed in the attempt to litigate the Federal and State actions simultaneously. The State actions do not seem to be complex. It appears that they can be speedily handled at the conclusion of the Federal suit, which at the time of oral argument here was ready for trial. This assumes, of course, that the disposition of the Federal action will allow the State actions to proceed.

For the reasons given, the judgment of the appellate court is reversed. The judgments of the circuit court dismissing the actions are reversed, and the cause is remanded to the circuit court with directions for the entry of an order staying the actions pending the completion of the Federal proceeding.

*Reversed and remanded,*
*with directions.*